**In re David & Sharon SEELYE, Debtors.**

**David & Sharon Seelye, Plaintiffs,**

**v.**

**Mercury Finance Co. of Illinois, Defendant.**

**Bankruptcy No. 99 B 26361. Adversary No. 99 A 01376.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Jan. 21, 2000.

Kenneth Borcia, Libertyville, IL, for plaintiffs.

Joel Schechter, Grossman, Mitzenmacher & Schechter, Chicago, IL, Hene Goldstein, Golstein & Joyce, Deerfield, IL, for defendants.

### *MEMORANDUM OPINION*

RONALD BARLIANT, Bankruptcy Judge.

### Background

The plaintiffs, chapter 7 debtors David and Sharon Seelye ("the Debtors"), allege in their complaint that the defendant, Mercury Finance Company of Illinois ("Mercury"), directly mailed a reaffirmation agreement to them that did not comply with the requirements for such agreements contained in § 524(c) of the United States Bankruptcy Code.[1] Although the Debtors did not sign the agreement and ultimately returned the collateral that had secured

---

1. Unless otherwise indicated, all further statutory references are to the United States Bankruptcy Code, 11 U.S.C. § 101 et seq.

the debt, a car, to Mercury, the Debtors allege that contempt sanctions, damages, and attorneys' fees are warranted for Mercury's "failure to comply with … [§ ] 524 and for intentionally contacting the debtors directly while they were represented by an attorney." (Pls.' Compl. at 4.) Presently, Mercury moves to dismiss the Debtors' complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[2]

### Discussion

In order to prevail on a motion to dismiss, the movant must show that the Plaintiffs can prove no set of facts that would entitle them to relief. *See* Fed. R.Civ.P. 12(b)(6); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."); *Kennedy v. Nat'l Juvenile Detention Assoc.,* 187 F.3d 690, 694 (7th Cir.1999) (same). In addition, the Court must accept as true all well pled allegations and draw all reasonable inferences therefrom in the Plaintiffs' favor. *See Jackson v. E.J. Brach Corp.,* 176 F.3d 971, 977 (7th Cir.1999).

Mercury argues that the Debtors' complaint must be dismissed because "§ 524 does not grant an independent right to Plaintiffs to assert any legal basis for this Court to sanction Defendant or award damages of any kind." (Mercury's Mot. to Dismiss ¶ 5.) The Debtors allege that Mercury contacted them directly despite knowing that they were represented by counsel in an attempt to coerce them into signing a reaffirmation agreement violative of § 524(c). In addition, Exhibit A to the complaint suggests that Mercury sent the reaffirmation agreement to the Debtors in August, 1999. As the Debtors

---

2. Federal Rule of Civil Procedure 12(b)(6) is made applicable to this proceeding via Federal Rule of Bankruptcy Procedure 7012(b).

were not granted their discharge until December 11, 1999, the alleged direct contact occurred while the automatic bankruptcy stay was in place. Section 362(a)(6) prohibits a creditor from engaging in "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." Section 362(h) provides for the recovery of actual "and, in appropriate circumstances ... punitive damages," for willful stay violations. Therefore, whether or not § 524 creates a private right of action, the Debtors' complaint states a claim under § 362 for civil contempt.[3] The failure to identify the correct Code section is not grounds for dismissal when the complaint states a claim for relief under another section. *See Ryan v. Illinois DCFS*, 185 F.3d 751, 764 (7th Cir.1999) ("While a plaintiff may plead facts that show she has no claim, ... she cannot plead herself out of court by citing the wrong legal theory or failing to cite any theory at all."); *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir.1992) ("A complaint under Rule 8 limns the claim; details of both fact and law come later, in other documents. Instead of asking whether the complaint points to the appropriate statute, a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations.").[4]

Mercury's attempt to liken this case to *In re Duke*, 79 F.3d 43 (7th Cir.1996), is similarly unpersuasive. In *Duke*, a creditor had sent a letter to a debtor's attorney requesting that the debtor's attorney consider negotiating a reaffirmation agreement. The creditor also sent a "carbon copy" of the letter directly to the debtor with a notation on that copy that it was "[f]or information purposes only." *Id.* at

44. Although, as stated above, § 362(a)(6) prohibits "*any act* to collect, assess, or recover a claim," emphasis added, the Seventh Circuit found that the act of communicating directly with the debtor in that case did not violate § 362 because the letter was neither threatening nor coercive. *Id.* at 45–46.

The Seventh Circuit in *Duke* created a "please-and-thank-you" exception to the unqualified prohibition of § 362(a)(6), for which there is no statutory basis. The *Duke* court apparently reasoned that, since the Bankruptcy Code provides for reaffirmation agreements, Congress must have intended to allow creditors to solicit reaffirmation agreements by direct contact with debtors, even though Congress expressed no such intention, and seemed to preclude such practice by the broad and unqualified language of § 362(a). The *Duke* court apparently did not consider the possibility that Congress intended to leave it up to the debtor to initiate negotiation of a reaffirmation agreement. The unqualified language of § 362(a) is consistent with that intent, which is also consistent with the general fresh start policy underlying bankruptcy law. A reaffirmation of a discharged debt compromises the debtor's fresh start, increasing the likelihood of future financial failure. Congress might reasonably have believed that many individual bankruptcy debtors are unsophisticated and unskilled in financial matters, and susceptible to even mild pressures. Congress, therefore, might reasonably have decided that debtors should be protected from importunings, however politely expressed, to reaffirm debts, while allowing the debtor to initiate discussions when the debtor felt it was in his or her interest to do so.

---

3. As a violation of the automatic stay necessarily "arises in a case under title 11" and concerns "the administration of the [bankruptcy estate]," this Court has jurisdiction to hear and determine this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and (b)(2)(A).

4. The Debtor's complaint is entitled "DEBTOR'S [sic] COMPLAINT TO HOLD CREDITOR IN CONTEMPT FOR FAILURE TO COMPLY WITH BANKRUPTCY CODE SECTION 524 & FOR CONTACTING THE DEBTORS DIRECTLY WHILE THEY WERE REPRESENTED BY AN ATTORNEY."

■ The *Duke* court, however, (following other circuit and bankruptcy courts) judicially created an exception to the plain language of § 362(a) for solicitations of reaffirmations that are found to be neither threatening nor coercive. Since it is a judicially created exception to a statute, however, this Court believes it should be narrowly construed. In this case, Mercury's alleged conduct falls outside the scope of the narrow *Duke* exception to § 362(a)(6)'s prohibition against "any act to collect" a pre-bankruptcy claim.

■ Here, in contrast to the *Duke* facts, the Debtors' attorney was never notified of the creditor's attempt to procure a reaffirmation agreement, and the complaint appears to allege that the agreement was sent without any accompanying letter explaining, for instance, that the Debtors need not sign the agreement. The letter in *Duke* clearly stated that the debtor could choose not to reaffirm by stating *to the debtor's attorney*, "[s]hould *your client elect* to reaffirm ... and enclosing a '*proposed* Reaffirmation Agreement.'" *Id.* at 44 (emphasis added). In addition, the agreement at issue here contains none of the language that is mandatory under § 524(c). If Mercury had complied with § 524(c)(2), the proposed form of agreement would have contained "clear and conspicuous" statements that the Debtors were not required to sign the agreement, and, if they did sign, they would have a 60 day (or longer) right to rescind. Further, the agreement contains no signature line for the Debtors' attorney and misleadingly contains a signature line for the "Bankruptcy Judge." [5] Hence, upon receiving such an agreement, a debtor might reasonably believe that the "Bankruptcy Judge" requires the agreement and would not have realized that, for a reaffirmation to be enforceable, either the debtor's attorney had to consider and sign-off on the agreement or a court hearing was required to ensure that the debtor understood the consequences of reaffirming an otherwise dischargeable debt. § 524(c)(3), (6). (That the agreement would have been unenforceable does not excuse Mercury's conduct. A debtor might not know the law and pay under a mistaken belief, and Mercury's failure to communicate through the debtor's lawyer would increase that risk.) All these facts distinguish this case from *Duke*, and Mercury's conduct if the allegations are true, is beyond the scope of the *Duke* exception.

■ Finally, the fact that the Debtors did not sign the agreement and ultimately returned Mercury's collateral is of no consequence to this motion to dismiss. The automatic stay does not prohibit only successful attempts to collect claims. Whether the Debtors suffered actual damages as a result of the alleged conduct is yet to be shown. The complaint alleges a violation of the automatic stay on its face, and the Debtors may now come forward with evidence of actual damages. In addition, the Debtors' allegations are sufficiently serious to warrant investigation of Mercury's conduct in other cases. If Mercury is engaged in a pattern of such conduct, this may be an appropriate case for punitive damages.

## Conclusion

Clearly, if the Debtors had signed the "agreement" Mercury allegedly sent directly to them, the agreement would not have been enforceable. The issue in this case, however, is not the enforceability of the unsigned agreement but whether Mercury violated the automatic stay. The Debtors' complaint alleges sufficient facts to state a claim for a violation of § 362 because Mercury's alleged conduct does not fit within the limited exception created by the Seventh Circuit in *Duke*. Therefore, the motion to dismiss will be denied,

---

5. The agreement also confusingly states that the Debtor's have an "unpaid balance of 7898.58" but asks the Debtor to agree to pay $303.68 per month until $14,475.64 [apparently the original note balance] is paid in full. (Pls.' Compl. Ex. A.)

and Mercury will be required to answer the complaint forthwith.